(No. 33225.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAYMOND HOWARD FRYMAN *et al.,* Plaintiffs in Error.

*Opinion filed November 18, 1954.*

Francis R. Wiley, and A. R. Ivens, both of Decatur, for plaintiffs in error.

Latham Castle, Attorney General, of Springfield, and Kenneth E. Evans, State's Attorney, of Decatur, (Fred G. Leach, George W. Schwaner, Jr., Lloyd F. Latendresse, Roy B. Foster, and David C. Jack, of counsel,) for the People.

Mr. Chief Justice Bristow delivered the opinion of the court:

The plaintiffs in error were jointly indicted and tried by jury in the circuit court of Macon County and found guilty of the crime of rape. The jury fixed punishment of each of the defendants at one year in the Illinois State Penitentiary and motions for new trial and in arrest of judgment having been overruled the defendants were each sentenced on the jury's verdict and bring this writ of error to review the same.

Error is assigned that the verdict is contrary to and not supported by the evidence; that evidence was improperly excluded, and that instructions were improperly refused.

The prosecutrix met the defendant Fryman on the night of June 5, 1953, as she was leaving a roller skating rink

near Decatur and rode into town with him on his motorcycle. During such time arrangements were made whereby Fryman would get a car and they would meet later in town. Fryman met the defendant White, who had a car, and the two of them later met the prosecutrix and a girl friend of hers at a prearranged place. From there the four obtained some beer and drove aimlessly about, after which they stopped at a cafe near Decatur Lake but none got out of the car except the prosecutrix's girl friend, who went into the cafe and made a phone call. Thereafter they drove out into the country, whereupon they stopped on a dark lane and Fryman and the prosecutrix got out of the car. The defendant White drove the prosecutrix's girl friend back into town and returned and picked up Fryman and the prosecutrix.

Thereafter the two defendants and the prosecutrix made another tour around the countryside. The prosecutrix testified that the defendants then stopped the car and forcibly transferred her from the front to the back seat of the car; that she tried to get out, put up a fight and attempted to flee, but that White held her down while Fryman forcibly had intercourse with her and that thereafter Fryman restrained her while White did likewise. Thereafter the three got in the front seat and she was driven to her home. She told them where she lived and they let her out a couple of houses past her home about midnight, after she made a date with Fryman for the next day.

The defendant Fryman admits having had intercourse with the prosecutrix but denies that it was against her consent. The defendant White denies having had intercourse with the prosecutrix at any time.

There is direct conflict between the testimony of the prosecutrix and of the two defendants as to many of the details as to what occurred the night in question.

The testimony of the girl friend of the prosecutrix as to the details of what transpired prior to the time she was

let out of the car was in conflict in many respects with the testimony of the defendants. She was not present, however, and did not testify to any of the facts alleged to have occurred at the time of the commission of the alleged offense.

The mother of the prosecutrix testified that she was at a tavern when her daughter called her, shortly after midnight, told her to hurry home, that the fellows raped her and that they would come back and get her. A motion to strike such testimony was overruled, and the mother was further permitted to testify that when she got home she found prosecutrix crying, doubled up with pain, her hair and dress torn, and blood running down both her legs on her socks and shoes; that she took her down to the hospital where a doctor examined her and from there they went to a police station. The doctor testified that he examined prosecutrix at the hospital and there was positive evidence of recent intercourse.

The dress, slip and girdle of the prosecutrix were introduced in evidence and showed slight tear of the lace on the dress at the neckline and all garments showed the presence of dried blood.

The defendants offered several witnesses to the effect that the general reputation of the prosecutrix as to chastity and morality and for truth and veracity was bad. Three of such witnesses were boys who either ran in or knew the crowd with which the prosecutrix associated. On cross-examination each of these witnesses indicated they had not discussed the question of chastity and virtue of the prosecutrix with her neighbors but with those with whom she associated and they could not name many of the persons with whom prosecutrix associated although they named some. One of such witnesses testified that he did not know what "chastity" meant but that he thought it meant "drinking." The People's objection to the testimony of these three as to reputation as to chastity, and truth and

veracity, was sustained as well as the objection to the fourth witness for failure to lay a sufficient foundation.

The People tendered ten instructions, of which the court gave nine, and the defendants tendered twenty-one instructions, of which the court gave seven.

Where a prosecutrix is in the possession of her faculties and physical powers, the evidence in a rape case must show such resistance as demonstrates the act was against her will. (*People* v. *Tocco*, 413 Ill. 305; *People* v. *Meyers*, 381 Ill. 156.) However, the question of credibility of witnesses is for the jury, and the fact that the jury believed the testimony of prosecutrix rather than that of defendants finds abundant support in the record. We are not disposed to substitute our judgment for that of the jury who had the benefit of viewing the proceeding at close range.

However, the very nature of a rape case demands the exercise of extreme care in excluding evidence which might deprive the defendants of a fair and impartial trial. (*People* v. *Stanton*, 1 Ill. 2d 444.) And in this case the alleged errors in rejection and admission of evidence and in the refusal of instructions must be carefully considered.

As to the objection concerning the testimony of prosecutrix's mother, it has been held that in a prosecution for rape evidence of a complaint made by the prosecuting witness to a third person is admissible in corroboration of her testimony as to the commission of the crime on the ground that it is the natural and spontaneous expression of outraged feeling, yet if the complaint is made in response to questions it is not admissible, and when the fact of such complaint is admissible any details of the transaction and the name of the person charged are not admissible. *People* v. *Cappalla*, 324 Ill. 11.

In this case the witness was properly permitted to testify as to prosecutrix's statement made over the telephone complaining of the offense alleged and as to the physical facts observed upon the witness's arrival home. Such com-

plaint was not made in response to questions and no details of the alleged transaction nor the names of the persons charged were brought out by such witness's testimony.

Want of consent on the part of the prosecutrix is of the essence of the crime of forcible rape and must be proved by the prosecution beyond reasonable doubt before there can be a legal conviction of that crime. (*Sutton* v. *People,* 145 Ill. 279.) In order to show the probability of consent, the general reputation of prosecutrix for immorality and unchastity is of extreme importance and may be shown. (75 C.J.S., Rape, sec. 63, p. 535; *People* v. *Cox,* 383 Ill. 617.) The underlying thought is that it is more probable that an unchaste woman would assent to such an act than a virtuous woman, but in such case the evidence must be confined to general reputation for chastity before the act charged. *People* v. *Allen,* 289 Ill. 218; *Shirwin* v. *People,* 69 Ill. 55.

The personal opinion of a witness relating to the reputation is not admissible but must be confined to general reputation, yet a witness may properly testify to another's reputation based on knowledge of such reputation obtained through contact and association with such person's neighbors, friends or associates. (*People* v. *Shelton,* 388 Ill. 56; *People* v. *Reeves,* 360 Ill. 55.) Furthermore, it is not necessary that the witness should have heard a considerable number of persons speak of the individual's reputation so long as the persons who have spoken of the reputation are neighbors, friends or associates. (*Gifford* v. *People,* 148 Ill. 173.) Here certain of the character witnesses testified that they were familiar with the prosecutrix's reputation among her friends and associates for chastity and, on cross-examination, named some of such associates although they were not able to name all of them. The court excluded such testimony for the reason that no sufficient foundation was laid. We are of the opinion that the trial court erred in so doing. Although the answers made on

cross-examination might tend to weaken their testimony, it should have been admitted for what it was worth. Of course the testimony of those character witnesses for which a proper foundation was not laid, as well as the testimony of the character witness who did not know what the term "chastity" meant, was properly excluded. However, the testimony of the other two character witnesses should have been admitted, and since such testimony, if believed, might have a material bearing on the jury's conclusion as to consent or want of consent, which was a vital issue in the case, we believe serious error was committed by the trial court in the exclusion of such evidence.

In the instructions given the jury by the court only three dealt with the nature of the crime of rape and the requirements of proof thereunder for conviction. The first thereof instructed the jury in the language of the statute that rape is the carnal knowledge of a female forcibly and against her will and any male person of the age of sixteen years and upwards, who shall have carnal knowledge of a female forcibly and against her will, shall be guilty of the crime of rape.

Another instruction was to the effect that the indictment charges the defendants and each of them with rape upon the person of the prosecutrix by force and that force is a constituent element in the crime of rape and must be proved by the evidence beyond all reasonable doubt before the jury is authorized to find the defendants or either of them guilty.

Another instruction was to the effect that in order to justify conviction of either defendant the State must prove every element of the crime of rape beyond all reasonable doubt and it was not the duty of the defendants to prove their innocence of the charge and that unless the State had proved every element of the crime of rape beyond all reasonable doubt it was the duty of the jury to acquit.

Instructions were offered as to each of the defendants, and refused by the court, to the effect that the burden of proof was on the prosecution to prove beyond all reasonable doubt that each of the defendants had sexual intercourse with the prosecutrix and also that such act was without the consent of the prosecutrix, and that if the State did not prove beyond all reasonable doubt that such intercourse was without her consent the defendants were not guilty and should be found not guilty. Four different instructions embodying· such ·charge, in substance, were offered and refused.

A defendant is entitled to have the jury instructed not only as to the law applicable to the state of facts testified to but applicable to any state of facts which the jury might legitimately find from the evidence to have been proved, and a defendant is entitled to the benefit of any defense shown by the entire evidence. (*People* v. *Cash,* 326 Ill. 104; *People* v. *Scalisi,* 324 Ill. 131.) The primary defense of the defendant Fryman, in this case, was consent of the prosecutrix. Although offered, no instruction as to the effect of consent or want of consent was given to the jury, except in the language of the statute, "forcibly and against her will." Certain of the instructions tendered in this regard, but refused, were in substantially the same language as a similar instruction which was given and approved in *Sutton* v. *People,* 145 Ill. 279. It was indicated in that case that it was not necessary that the jury affirmatively believe from the evidence that the prosecutrix consented to the act in order to entitle the defendant to a verdict of not guilty, but it was the jury's duty to return a verdict of not guilty if they entertained a reasonable doubt on that subject, and the defendant was entitled to an instruction to that effect.

Although refusal of a tendered instruction is not error if covered by others which are given, (*People* v. *Young,* 398 Ill. 117,) yet the defendant is entitled to have the jury

fully instructed as to the law applicable to the facts underlying his defense. Whether or not the prosecutrix voluntarily submitted to the carnal relationship described herein was the controlling factual issue in the instant trial. The fact that she, on the night that she was assaulted, agreed to another date, is highly suggestive of an approval on her part of what had happened. There were other facts, however, that indicated the contrary. Nevertheless, the defendants were entitled to have the jury instructed in no uncertain language that if the prosecutrix did consent to intercourse, it was not rape. It was error to refuse such an instruction.

Because of the foregoing errors we are of the opinion that the judgment must be reversed and the cause remanded for another trial.

*Reversed and remanded.*